## KATILA v. BALTIMORE & O. R. CO.
### No. 7825.

Circuit Court of Appeals, Sixth Circuit.

June 28, 1939.

Marvin Harrison, of Cleveland, Ohio (Harrison & Marshman, of Cleveland, Ohio, on the brief), for appellant.

Sidney D. L. Jackson, Jr., and Dwight B. Buss, both of Cleveland, Ohio (Baker, Hostetler, Sidlo & Patterson, of Cleveland, Ohio, on the brief), for appellee.

Before SIMONS, HAMILTON, and ARANT, Circuit Judges.

SIMONS, Circuit Judge.

In an action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. for damages due to injuries received while in the employ of the defendant, the appellant by verdict of the jury was awarded $8,000. He complains of its inadequacy, his main grievance being that the court, while permitting proved damages to be reduced in the ratio that his own negligence bore to total negligence, yet erroneously withheld from the jury a specification of substantial negligence notwithstanding a specific request that it be submitted. A new trial is therefore sought.

Katila, thirty-eight years old, was employed by the appellee as a car inspector, having been in its service for thirteen years. Upon the night of June 22, 1936, he was engaged in the Painesville yard of the appellee in checking air pressure of a string of freight cars which were to be moved out later in the night. While so employed the air supplied under pressure from a pipe leading from the shops failed. Katila and Miles, a fellow inspector, started looking for the source of the trouble. Knowing that the air line came through a box located in the yard, wherein was a gauge indicating air pressure on the line,

they decided to examine it. The air box was sunk in the ground between the old lead track and track 1. It had a metal flanged cover estimated to weigh from fifty to a hundred and forty pounds. Miles took a position at the northwest corner of the box in close proximity to track 1. Katila at first was also on the northerly side of the box. With some difficulty they pried the cover loose. As its northerly edge was lifted they were able to look into the box, and by means of their lanterns determine that the gauge showed lack of air pressure on the line. There is evidence that Katila then stepped to the opposite side to help replace the cover, which had slipped somewhat to the east. It was while the men were in this position, Miles on one side of the box and near track 1, facing south, and Katila on the other facing north, that the accident happened, by reason of a string of cars being moved north along track 1.

The negligence of the railroad consisted in failure to have a brakeman riding the lead or front end of the train, and failure to have a light on this end, in conformity with rule and custom. The manner of the accident, according to the theory of the appellant, and within the evidence, is that as each man had hold of the box cover with his left hand, the cover being inclined toward the north, and while Katila was kicking the lower end of it to secure its alignment with the box and so off balance, the lead car struck Miles and knocked him backwards. As a result the lid was violently jerked in the same direction so that Katila was catapulted over the box, along the ground, and under the lead car of the train, which was moving at a speed of three to ten miles an hour. It was testified that the car did not strike the metal cover nor Katila, but struck Miles, and that when the latter's hold on the box cover was torn loose it was done so violently that the skin of his palm was torn. Katila's leg was badly mangled, necessitating its amputation midway between the knee and the hip, his shoulder was broken, and he sustained other injuries. A specification of negligence in addition to the failure of the railroad to have a man or light at the front of the lead car was that Miles was negligent in standing too close to the track and in failing to keep a lookout for the approach of cars, and that his negligence was attributable to the railway. So the grievance is that since the jury was permitted to reduce damages by the application of the rule of comparative negligence, all negligence attributable to the railway should have been submitted to the jury.

■ The court overruled the appellant's request with respect to the negligence of Miles, and in denying a motion for new trial expressed the view that the defendant's negligence was unitary whether resulting from one or more faults, so that compensation to be awarded for it might not be increased by the number of errors committed. It is undoubtedly true that when negligence of a defendant is established compensation is based not upon the gravity of the fault or the number of faults that led to the injury, but is measured by the loss suffered, damages in the usual case being compensatory and not punitive. But once there is introduced into the law, as here, the doctrine of comparative negligence, and a jury permitted to reduce damages in proportion as the plaintiff's negligence bears to total negligence, then there may not be adequate assay of total negligence unless all negligence supported by evidence is given consideration. This would seem to be the command of reason as we think it is the mandate of authority. Seaboard Airlines Ry. v. Tilghman, 237 U.S. 499, 35 S.Ct. 653, 59 L.Ed. 1069; Norfolk & Western Ry. Co. v. Earnest, 229 U.S. 114, 33 S.Ct. 654, 57 L. Ed. 1096, Ann.Cas.1914C, 172; Walker v. Kroger Grocery & Baking Co., 214 Wis. 519, 252 N.W. 721, 92 A.L.R. 680; Chadwick v. Oregon-Washington R. Co., 74 Or. 19, 144 P. 1165.

■ The verdict was general, and it is impossible, of course, to say in what amount damages were found or by what sum they were reduced because of negligence of the plaintiff. That they were reduced is, however, reasonably to be inferred. The appellant had an expectancy of twenty-nine years, was in perfect health, earning $5.84 per day, and had risen to the position of car inspector with full seniority rights. Except for somewhat limited usefulness at a nominal wage, he was permanently and totally disabled. We accept the view of the District Judge, "One must be frank enough to concede that the amount of the verdict represents a diminished sum because of negligence found attributable to the plaintiff," and must therefore conclude that there was prejudicial error in failing to submit to the jury the issue as to Miles' negligence, unless, as is urgently insisted by the carrier, there was no sub-

stantial proof of it, and to this we now address ourselves.

■ The appellant contends that Miles was negligent in failing to observe a custom of keeping a lookout to protect his fellow employee, and in standing too close to the track. The evidence does not clearly establish the custom, and all witnesses save Katila deny its existence. While Katila testified that when two men are working each must protect the other, yet he conceded that on air tests he was obliged to look after his own safety, and the so-called "blue flag rule" of the carrier placed the duty of self-protection upon the individual employee not only when he was in a position under or between the cars but generally.

If Miles, however, stood so close to the track as to be hit by an approaching train, he was negligent, and his negligence imposes a liability upon the carrier for all injury proximately resulting to others therefrom. It may not be said that the negligence of Miles was merely in respect to his own safety without foreseeable danger to Katila since both were jointly engaged in an operation that could not conveniently, if at all, be performed by either, and it was within the range of expectability that if at the time both men were engaged with the heavy box lid either was struck by an approaching train injury would result to the other.

The requested instruction with respect to the controverted negligence of Miles in standing too close to the track presented to the court a permissible interpretation of the evidence as to the manner of the accident. It is criticism of the request too minute to be persuasive of its departure from the evidence to say that the reference therein to Miles having "permitted himself to stand too close to the tracks upon which the train was approaching" assumes that Miles saw the approaching train when the evidence clearly establishes that he neither saw nor heard it. The train did approach, and the challenged phrase but indicates that fact as in the chain of evidence. The jury could not have been misled.

The appellee's principal contention, however, is that the physical facts demonstrate that Katila and not Miles was struck by the lead car, and that even though Katila testified that he was not struck his evidence is unworthy of belief within the rule of Southern Railway Co. v. Walters, 284 U.S. 190, 52 S.Ct. 58, 76 L.Ed. 239, as applied by us in Ristucci v. Norfolk & Western Ry. Co., 6 Cir., 60 F.2d 28. It is urged that the improbability of Katila being so violently jerked over the box lid and onto the track some distance away, even when he was off balance, is so great that his story is incredible, and its incredibility demonstrated by the finding of his Stilson wrench immediately after the accident partially under the west end of the lid, his cap about four feet north of the box along the east rail of the track, and broken lens from an inspector's lantern near the cap. The difficulty with this contention is that it does not demonstrate the impossibility of the accident happening as explained by Katila, nor even its too remote probability. At most it but presents circumstances arguable to the jury in support of an inference that the accident happened in some other way, and a reviewing court will not substitute its judgment for that of the jury by accepting an inference, however, plausible, that is not compelled by proved circumstances necessarily destructive of direct evidence.

■ Since the case must be retried, it is necessary to say that we find no error in the admission by the court of the blue flag rule of the carrier. It is a general rule cautioning all employees that "in case of doubt (the employee) must display the blue signals or notify the engineman or motorman." While one of its specific purposes is to safeguard men working under or between cars, it is general in terms and application, requiring a recognized precaution in all situations where danger may be apprehended and an inquiry as to its observance is relevant in respect either to the negligence of Miles or the contributory negligence of Katila.

The judgment below is reversed and the cause remanded for new trial.